TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 22-304 |
| of | : | June 22, 2022 |
| ROB BONTA<br>Attorney General | : | |
| LAWRENCE M. DANIELS<br>Deputy Attorney General | : | |

Proposed relators SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE OF SOUTHERN CALIFORNIA, PASTOR WILLIAM D. SMART, JOY ATKINSON, MARY LEE, KWAME COOPER, and HARRY MCELROY (Relators), have applied to this office for leave to sue proposed defendants the CITY OF LOS ANGELES, the LOS ANGELES CITY COUNCIL, and HERB WESSON (Defendants) in quo warranto to remove Wesson from his public office on the Los Angeles City Council, representing Council District 10. Relators assert that the city council's appointment of Wesson violated Los Angeles City Charter provisions governing vacancy appointments and term limits.

We conclude that substantial questions of law exist as to whether Wesson's appointment to the Los Angeles City Council was lawful. Further, the public interest will be served by allowing the proposed quo warranto action to proceed. Consequently, the application for leave to sue is GRANTED.

1

# BACKGROUND

The City of Los Angeles is a charter city governed by a city council consisting of 15 members, each representing a geographical district.  The city council members are elected for four-year, staggered terms in even-numbered years.[1]

We begin by reviewing the sequence of events relevant to the application:

- *November 3, 2020*: Mark Ridley-Thomas was elected to a four-year term as the District 10 council member on the Los Angeles City Council. He assumed the office on December 15, 2020.

- *October 13, 2021*:  In a 20-count indictment, the United States Attorney's Office for the Central District of California charged Ridley-Thomas with conspiracy, bribery, mail fraud, and wire fraud.  His trial on these charges is currently set for August 9, 2022.

- *October 18, 2021*: Ridley-Thomas announced he would immediately step back from participation in City Council meetings and committees, but did not resign.

- *October 20, 2021*:  Pursuant to section 211 of the Los Angeles City Charter, entitled "Suspension Pending Trial," the city council voted to suspend Ridley-Thomas as a result of these pending criminal proceedings.

- *February 16, 2022*:  City Council President Nury Martinez introduced a motion to appoint Herb Wesson to temporarily fill the vacancy created by the suspension of Ridley-Thomas.  Wesson had previously served three full terms as a Los Angeles City Council member for District 10, completing his third term in 2020.

- *February 22, 2022*:  The city council voted to "appoint Herb Wesson to hold the office of Council District 10 through December 31, 2022 or until Mr. Ridley-Thomas is acquitted or the charges against him are dropped, whichever comes first."[2]

Relators challenged the city's actions regarding the District 10 seat by filing a petition for writ of mandate and complaint for declaratory and injunctive relief in Los

---

[1] Los Angeles City Charter, §§ 100, 101, 204, subd. (g), 205, subd. (a), 241.

[2] The parties' submissions do not reflect why the council selected December 31, 2022, as the last possible date that Wesson could serve as a temporary appointee.

Angeles County Superior Court on February 18, 2022.[3]  This action sought to vacate the city council's suspension of Ridley-Thomas, enjoin the council from making a temporary appointment for District 10, and vacate Wesson's appointment to the District 10 seat. The Court granted Relators' motion for a temporary restraining order (TRO) enjoining Wesson from participating as a council member until March 17, 2022, and scheduled a hearing for that date on whether a preliminary injunction should issue.[4]  In so ruling, the court stated that the charter provision for filling vacancies, section 409, "doesn't seem to allow appointment for a set period of time" and that Wesson's "appointment conflicts with or potentially conflicts with term limits."[5]  The court then found that "there is sufficient likelihood of success on the claim that Mr. Wesson cannot be appointed, or the order appointing him should be invalidated" and that "the balance of harms also tips in favor of [Relators] as to that claim."[6]  At the March 17 hearing, however, the court determined that quo warranto (not mandate) would be the appropriate action to test the validity of Wesson's title to office.  The court therefore dissolved the TRO prohibiting Wesson from participating as a council member and denied the preliminary injunction to vacate the council's appointment of Wesson.

Relators then submitted to the Attorney General the present application to sue in quo warranto, which contends that Wesson's appointment violated various city charter provisions, including the city's three-term limit for council members.  Defendants oppose this application, asserting that the charter authorizes this vacancy appointment and that an exception to the term-limit provision applies because Wesson was appointed to a term of less than two years.

## ANALYSIS

Quo warranto is a civil action that may be used to challenge a public official's eligibility to hold a given public office.[7]  Where a private party seeks to pursue a quo warranto action, the party must obtain the consent of the Attorney General.[8]  In deciding

---

[3] *Southern Christian Leadership Conference of Southern Cal. v. City of Los Angeles* (Super. Ct. L.A. County, 2022, No. 22STCP00617).

[4] The court denied the motion for a TRO to vacate the suspension of Ridley-Thomas and to enjoin the council from making a temporary appointment to District 10.

[5] Relators' Statement of Facts, Exh. A at 16.

[6] *Ibid.*

[7] Code Civ. Proc., § 803; *People ex rel. Pennington v. City of Richmond* (1956) 141 Cal.App.2d 107, 117.

[8] *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 693-698.

22-304

whether to grant consent, we do not resolve the merits of the controversy. Instead, we grant leave to sue if we find that (1) quo warranto is a proper remedy to resolve an issue presented; (2) the application presents a substantial question of law or fact warranting judicial resolution; and (3) granting the application would serve the overall public interest.[9] Here, these three requirements are met.

## 1. Availability of Quo Warranto Remedy

Quo warranto is an available and appropriate remedy here. It is a proper action to determine whether, as a result of an appointment, a public official "usurps, intrudes into, or unlawfully holds or exercises any public office . . . ."[10] Relators' argument, if accepted, would mean that Wesson is unlawfully holding public office on the city council due to a defective appointment.[11]

## 2. Substantial Issues Regarding Legal Eligibility to Serve

As discussed in more detail below, when the city council suspended Ridley-Thomas, it created a temporary vacancy as a matter of law pursuant to section 211 of the Los Angeles City Charter. The parties dispute whether, in making an appointment to fill that vacancy, the council (1) had the authority to select a term other than the remainder of Ridley-Thomas's full term when they appointed Wesson and (2) whether the Wesson appointment violated the charter's three-term limitation. For the reasons explained below, we conclude that there are substantial questions about whether the Los Angeles City Charter authorizes Wesson's recent appointment to the Los Angeles City Council.

### *A Substantial Question of Law Exists Regarding the Permissible Term for an Appointee Filling a Temporary Vacancy*

A "temporary vacancy" is mentioned only once in the charter, in section 211 titled "Suspension Pending Trial."[12] This section states that pending trial, the council may

---

[9] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879; 96 Ops.Cal.Atty.Gen. 36, 40 (2013).

[10] See Code Civ. Proc., § 803; see 103 Ops.Cal.Atty.Gen. 33, 35-36 (2020); 101 Ops.Cal.Atty.Gen. 24, 24 (2018).

[11] See Los Angeles City Charter, §§ 201, 206, 211, 409.

[12] Section 211 provides in full:

> Pending trial, the Council may suspend any elected officer, and the appointing power may suspend any appointed officer, against whom felony criminal proceedings, or criminal misdemeanor proceedings related to a violation of official duties as described in Section 207(c). The temporary vacancy shall be filled in accordance with the Charter.

4

suspend an elected officer against whom felony charges have been filed, and directs that "[t]he temporary vacancy shall be filled in accordance with the charter."[13]  Nothing in the Charter provides express direction about how to fill a temporary vacancy.

Charter section 409 addresses vacancies generally, and authorizes the city council to fill vacancies by appointment or special election.[14]  Where a vacancy is filled by appointment as is the case here, section 409 provides that "the Council may fill a vacancy by appointing a person to hold the office for the portion of the unexpired term remaining until the next Monday in December of an even-numbered year."[15]  The parties disagree about whether section 409 applies to a *temporary* vacancy such as that created by Ridley-Thomas's suspension, as opposed to a vacancy generally such as one created by a councilmember's resignation, death, or incapacity.

Relators argue that section 409's reference to "vacancies" encompasses temporary vacancies and that Wesson's appointment is invalid because he was not appointed to "hold the office for the remainder of the unexpired term," as required by section 409 but instead only until December 31, 2022.  Defendants counter that applying section 409 to temporary vacancies would be unworkable because there are situations where the original

---

Vacancies generally are referenced in several other provisions of the charter.  (See Los Angeles City Charter, §§ 204, 205, 207, 210, 243, 407, 409, 410, 502, 503, 700, 802; see also *id.*, § 508, subd. (c) (permitting a "temporary appointment" of chief administrative officer after a vacancy).

[13] Los Angeles City Charter, § 211.

[14] Section 409(a) provides in full:

> The Council may fill a vacancy by appointing a person to hold the office for the portion of the unexpired term remaining until the next second Monday in December of an even-numbered year.  If any portion of the term remains after that date, the Council shall also call a special election or elections to fill the remainder of the term, and shall consolidate the election with the primary nominating election and general municipal election next following the appointment.  If a vacancy is filled by appointment after the first date fixed by law for filing a Declaration of Intention to become a candidate at the next primary nominating election, the person appointed shall hold the office for the remainder of the unexpired term.

(Los Angeles City Charter, § 409, subd. (a).)

[15] The parties agree that Wesson was appointed after the cut-off for calling a special election to fill the vacancy, so if section 409 applies, the appointment would be for the remainder of the term.  (Los Angeles City Charter, § 409, subd. (a).)

22-304

officeholder and the appointee could both claim entitlement to the seat.[16]  Defendants also argue that the lack of explicit direction in the charter about filling temporary vacancies means that the city council has discretion to fill those vacancies in any way not prohibited by the charter.

As the parties' arguments demonstrate, there is a potential conflict between section 211 (the council may "suspend" an officer pending trial, creating a vacancy that is only "temporary") and section 409 ("the person appointed shall hold the office for the remainder of the unexpired term"), raising a substantial question of law about whether section 409 applies to a temporary vacancy.  In keeping with our gatekeeper role, we do not purport to decide this question but simply conclude that it warrants judicial resolution.

### *A Substantial Question of Law Exists as to Whether the Term Limit Provision Bars Wesson's Appointment*

A related but distinct question of law involves whether Wesson's appointment violates section 206 of the city charter, which prohibits a person from serving more than three terms on the council.  Wesson has indisputably served three full terms and may not serve a fourth term, but Defendants argue that Wesson's appointment is allowed under an exception in section 206 for partial terms.  Charter section 206 provides that an otherwise termed-out council member may nonetheless serve when "the remainder of the term is less than one-half of the full term of office."  The maximum length of Wesson's term of appointment is ten months.  One-half of Ridley-Thomas's full term of office—four years—is two years.  Defendants contend that since ten months is less than two years, the exception is satisfied.

But a closer look at the wording of the term-limit exception in section 206 suggests it may not be applicable in this situation, as Relators contend.  Section 206 articulates the term-limit exception as follows: "These limitations on the number of terms of office shall not apply to any unexpired term to which a person is elected or appointed if the remainder of the term is less than one-half of the full term of office."  Read in context, the "unexpired term" appears to refer to Ridley-Thomas's elected term, not Wesson's appointed term.  The remainder of Ridley-Thomas's elected term at the time of Wesson's appointment was two years and 10 months.  That was *not* less than one-half of the full term of office (two years).  Thus, as Relators contend, Wesson's temporary

---

[16] For instance, Defendant's opposition describes a hypothetical scenario where someone could be appointed under section 409 for the remainder of the term, and Ridley-Thomas could then be exonerated, with the result that two people could each claim an entitlement to the same seat—one by virtue of appointment, and the other by the lifting of the temporary suspension.

6

appointment may not comply with section 206's term-limit exception. Again, while it is not our province to settle the parties' dispute, we conclude that Relators have presented a second substantial question of law warranting judicial resolution.[17]

### 3. Public Interest in Favor of Authorizing Proposed Action

Finally, we believe that the public interest is served by authorizing this quo warranto action. Generally, the existence of a substantial question of law or fact presents a sufficient "public purpose" to permit an action in quo warranto.[18] And here, in granting the TRO in the already-filed mandate action challenging Wesson's appointment, the court already stated that the charter provision for filling vacancies does not appear to allow an appointment for a fixed period of time and that Wesson's appointment may conflict with the charter's term limit provision.[19] The court also found that a TRO was justified because Relators had demonstrated sufficient likelihood of success on their claims challenging Mr. Wesson's appointment and because the balance of harms tipped in their favor.[20]

Defendants contend, however, that the public interest would not be served by granting the application to sue because only a short time remains until December 31, 2022—the latest date on which Wesson's temporary appointment could expire. But a court could resolve the matter before then, particularly given that there already has been some judicial consideration of the appointment in the related mandate action and the material facts of Relators' claim appear undisputed. In any event, we normally do not reject a quo warranto application based solely on timing considerations.[21]

Defendants additionally argue that because the charter does not provide specific rules for filling a temporary vacancy, the city council's "considered approach" should be accorded deference, militating against the public interest in allowing this litigation. We take no position on whether deference is appropriate under these circumstances, and we view Defendants' argument as one that a court could consider in determining the merits of Relators' unlawful-appointment claim. For present purposes, however, the lack of specific direction in the charter is further reason to allow this matter to proceed to court.

---

[17] The superior court's statement during the TRO proceeding, that Relators had a "sufficient likelihood of success" on the merits of both aspects of their unlawful-appointment claim, further supports our independent finding that there is at least a substantial legal question as to the validity of Wesson's appointment.

[18] 86 Ops.Cal.Atty.Gen. 82, 85 (2003).

[19] Relators' Statement of Facts, Exh. A at 16.

[20] *Ibid.*

[21] 97 Ops.Cal.Atty.Gen. 12, 19 (2014).

22-304

As we recently stated in another matter, "the validity of the appointment process employed here is a question of public importance that would benefit from judicial review."[22]

For these reasons, the application for leave to sue in quo warranto is GRANTED.

---

[22] 105 Ops.Cal.Atty.Gen. 65, 68 (2022) (granting leave to sue in quo warranto to challenge the appointment of a member of the Orange County Board of Education on the ground that the appointment violated the statutory and common law prohibitions against self-appointments).